May it please the Court, John Powell appearing for the appellants. Since at least 1878, the date of the Throckmorton decision cited in our brief, a litigant who procures a judgment against an adversary for extrinsic fraud violates a duty owed to its adversary. The plaintiffs have alleged that a judgment was procured in California courts and that a subsequent judgment also procured as a result of extrinsic fraud that occurred in the initial case, designated by both parties, I believe, as Kougasian 1 in the briefs. The plaintiffs have alleged the violation of the Throckmorton duty, which is not only recognized in Throckmorton, but in numerous California cases decided since then. And in fact, I don't believe there's any issue. No one suggested that the elements of a claim for extrinsic fraud have not been properly alleged in this case. Instead, the defense has filed a, well, two defendants have filed motions to dismiss, both of which were granted under Rule 12, suggesting that the Throckmorton claim, the same claim that is asserted in this case, was previously asserted in the second of the state court actions, Kougasian 2. Kougasian 2 contained a cause of action for intentional infliction of emotional distress under California law. A demurrer was filed to that cause of action and the other causes of action, but focusing on that one because that provides the basis for the claim of race judicata. A demurrer in the California court was filed on the grounds, not that extrinsic fraud had been which would be typical grounds for a demurrer, but rather on the grounds that the emotional distress claim in Kougasian 2 was barred by race judicata because it was simply a restatement of a claim that had been made in Kougasian 1. The trial court agreed, sustained the demurrer, and her judgment. An appeal to the California Court of Appeal was submitted, and actually it was pending at the time this action was filed, but since between the first appeal in this case and the second order, which is the one being appealed from now, the Court of Appeal made its final determination in the California courts and held that the demurrer was properly entered as to that cause of action. Why? Because as a result of the decision in Kougasian 1, the decision that we're alleging was obtained by extrinsic fraud, as a result of that decision, the defendants owed no duty to the plaintiffs in that case. In other words, the conduct which the defendants are saying is the same conduct that we are alleging constitutes extrinsic fraud and has already been determined adversely to us in the California courts, in fact didn't involve any duty. Well, if it was the same claim, if it involved a claim of extrinsic fraud, then clearly under Throckmorton and every decision that has decided these issues since 1878, a duty existed and, if violated, would have given rise to a claim. Now, why is that? The reason is real simple. The reason is that the second cause of action in Kougasian 2 was what it purported to be. It was a cause of action under California law for intentional infliction of emotional distress. It was not the cause of action for extrinsic fraud. The briefs go into detail on why that is, what the distinctions are, what elements were alleged, and why, in fact, in detail, the plaintiffs could not have alleged fraud at that time. Now, the district court drew some inferences from some of the language in that cause of action and said those inferences cause us to believe that fraud could have been alleged. But, in fact, I offered a declaration which laid out the history in detail, including proceedings before Judge Stover of the Los Angeles Superior Court in which Mr. Weiss, counsel for the defense, was present and made representations which Judge Stover and I relied upon. And Mr. Weiss, who is the attorney for a party in this case, offered no declaration disagreeing with anything I said in there. In fact, we accepted his representations. And the complaint explicitly states when we learned of the fraud, after the fact. Okay, what paragraph in your First Amendment complaint has new allegations that nobody's seen before? Which paragraphs? Paragraph 18. Paragraph 19. Yes, Your Honor. In a sense. I mean, it's all... Elwell as a witness, essentially, was something that was alleged in the Inkagazian, too. But what's alleged in this action is not Elwell being used as a witness because, under California law, you're permitted to use the declaration of a witness even if you don't provide his name and discovery, if you claim to be unable to, as they did here. The fraud was the ability to make him available and the failure to do so intentionally with the purpose. So your answer to my prior question is that of all the matters in your First Amendment complaint, the facts that are new that you've learned since Kugazian 1, 2, and 3 are all contained in paragraph 18. Well, Your Honor, I wasn't anticipating that question, and I have just, in response to it, taken a glance at the First Amendment complaint. But I believe that is where they're offered. And what is it that you learned here that is new to this case? That we didn't know at the time? Yeah. That the witness, Elwell, that the defendants could have made him available, could have provided us with his address and made him available for a deposition. We did not know that. And that's it? That is... Have you deposed him? Have you deposed Elwell? We haven't had the opportunity, Your Honor. Kugazian 2 was decided on demur. This case was decided on a motion to dismiss. The time period in here, February 15th to March 1st, 2002, remind me again of the timing. Did you have complaints pending at that time? Judgment had been entered. In which case? Well, the judgment was final in Kugazian 1. Judgment had been entered, I believe, had been entered in Kugazian 2 and was on appeal, I think. Okay. And what about Kugazian 3? That was... It was during the course of that. We... So you learned this information during the course of Kugazian 3? We learned it as a motion to dismiss was... Why didn't you move to reopen the cases in California? Why did we... Why didn't you? Once you learned this information, why didn't you seek to reopen the cases in California? Because we chose to proceed in this venue that my clients had moved to Virginia. But the fraud supposedly had been committed on the court in California, right? That's correct, Your Honor. And you don't think it's appropriate to bring it to the court upon which the fraud was... They had moved to Virginia? My clients lived in Virginia at the time this action was brought. But at the time of the incident? At the time of the incident, they lived in Huntington Beach. Which I assume is California. Oh, I'm sorry. I'm sorry, Your Honor. You're from New York. Yeah. That is in California. I'm sorry. Okay. The point of my reference to the issue of duty in the California Court of Appeal decision is that the California Court of Appeal did not view the cause of action in Cagazian 2 as a cause of action for extensive fraud. Had it so interpreted it, it would have found that there was a duty. Obviously, there is a duty to refrain from extrinsic fraud in any litigation. Throckmorton tells us that. But the Court of Appeal specifically ruled that there was no duty. The reason there was no duty, according to the Court of Appeal, is because this was the same cause of action that had been asserted in Cagazian 1, long before there had been any extrinsic fraud. So what we have is the Court of Appeal in California determining, based upon the argument of the defense, that the cause of action in Cagazian 2 is not, in fact, a challenge to the decision in Cagazian 1. It's the same cause of action. In other words, having lost in Cagazian 1 by throwing in a couple more facts, we tried another shot at it, and that wasn't going to be permitted. It had already been determined that they owed no duty to Don Cagazian with respect to emotional tranquility arising out of the death of James Cagazian. Counsel, the district court specifically found that in both your complaints, Cagazian 1 and Cagazian 2, that you alleged that defendants and their counsel engaged in witness tampering, frivolous, bad-faith actions taken for delay, frivolous, bad-faith actions taken to prevail by corrupt means and efforts at intimidation. That is correct. Those allegations are made. Those allegations have nothing to do with the production of the witness, James Elwell. So this is only about Elwell and nothing else? This case? Oh, this case. The only basis for extrinsic fraud is the fact that the judgment in the wrongful death case was obtained by the use of the Elwell Declaration, that we were denied access to Elwell when access could have been provided because they intentionally withheld his availability from us. Okay? When the Elwell Declaration was first submitted for the motion for summary judgment, all of the facts which are alleged in Cagazian 2, every single fact that was alleged in Cagazian 2, was presented by me to Judge Stover and we said, Judge, it just isn't fair to permit the summary judgment to go forward unless we can get the guy's deposition. We were out of luck on that. He permitted it to go forward and that declaration established the facts necessary for summary judgment. We thought that was unfair, but it did not constitute fraud. So basically what you're doing then is saying the California court was unfair and because it was unfair, it permitted the defense to commit an extrinsic fraud. No, I'm not saying that. I'm saying that what we knew at the time was that summary judgment was being granted on the basis of a declaration of a witness who had not been previously disclosed to us in discovery and that we had not had the opportunity to depose. Fine. Assume with me that he permitted you to go ahead and depose this fellow. He did. The judge said we could have the deposition. They didn't give us an address claiming, we later learned falsely, that they were unable to produce him. We didn't know of that. All we knew was that he hadn't been previously disclosed and they refused to provide his address because they said they didn't have it. That's all we knew. That isn't fraud. The court specifically ruled it wasn't fraud. We could not allege fraud on the basis of evidence that the trial court not only did not consider fraud, but considered admissible evidence. It was only later when we learned that they could have produced him that we were able to state a claim for extrinsic fraud. The facts that we put before Judge Stover in Kugazian 1 are the same facts that are alleged in Kugazian 2. They were not fraud in Kugazian 1. They are not fraud in Kugazian 2.  Their identity had not previously been disclosed and not giving us his address under a claim they didn't have it. The fraud was not giving us his address or providing him when they in fact were able to. We did not know that at the time. Judge Stover did not know that at the time. Mr. Weiss told us at the time that was not the circumstance and we believed him. In many pages in the brief and in the excerpt of the record, we laid out why it was reasonable for us to rely upon Mr. Weiss. The defendants in our brief don't argue that we shouldn't have. They don't contend we should have disbelieved Mr. Weiss. Counsel, you have four and a half minutes. Would you like to reserve some time for rebuttal? Your Honor, can I make? I do have one point. Absolutely, it's your time. All right. There's a point which I do make in the briefs, but in preparing for oral argument, I wish I had set forth as a separate heading. And that is, is it too late to make a simple citation to Witkin? You should provide it to the clerk. If you'd like to give us a citation, you can give it to the clerk afterwards and provide a copy to the opposing counsel. Okay. Witkin talks, Witkin is a California scholar who talks about when a judgment on a demurrer can establish res judicata, which is what we're talking about here. They're saying res judicata is established by the judgment in Cagazian II, which was decided on a demurrer. There's two circumstances. One, and the reason for this is that res judicata requires a determination on the merits. Well, there's never been a determination as to the merits of the claim for extrinsic fraud here. And Witkin says that if the new complaint, that is the complaint in this case, states the same facts and the former judgment determined that these facts did not constitute a cause of action, well, that didn't happen. What the court determined was, not that they didn't state a cause of action, but that they alleged something that was not a violation of no duty that was owed. It was decided on the basis of res judicata based on Cagazian I. The other circumstance is, though the new complaint states different facts, and that is the case here, the demurrer to the first was sustained on a ground equally applicable to the second. Well, clearly, that isn't true here, because the ground of res judicata, that is being the same cause of action alleged in Cagazian I, cannot apply to this case, which is, in fact, a challenge to the judgment of Cagazian I based upon extrinsic fraud. With that, I'll reserve the two minutes of my time this afternoon. Good morning, Your Honors. I'm Phil Weiss, attorney for TMSL and Howard Moore. As I was preparing for the hearing today and looking at the mountains of materials that have accrued over the years on this case, I was trying to figure out where to start. And then I realized probably the best place to start would be with Judge Cooper's order that we'll hear about today, since, of course, that's the point. That's what, I guess, is at issue. And in reading through her order, which I guess is at page 84 of the appellant's excerpts of the record, I'm struck by, you know, maybe I shouldn't be struck, but I'm struck by the clarity of her analysis here as to comparing the allegations of this present matter, Cagazian IV, with what was alleged in Cagazian II. Whether they wanted to call it intentional infliction of emotional distress in Cagazian II or extrinsic fraud today, it's all the same thing. It's just a different, you know, arose by any other name or whatever term we want to use. It is essentially the same thing. I was accused... What do we do with paragraph 18? This is the one that Mr. Powell identifies as the one paragraph in his first amended complaint that provides new facts, things that were not available and not argued in his prior briefs. I don't see any difference, frankly. I mean, if there's a particular clause or sentence that... Well, I'm looking at page 16 of that complaint, which is found at the excerpts of the record on page 59. Yes. He alleges that between February 15, 2002 and March 1, 2002, he learned facts sufficient to enable them to suspect and to allege that the Elwell Declaration was a complete fabrication. Then he says that on November 7, 2003, just from the dates alone, that sounds like there might be some new facts there. But this was the one paragraph that he was able to identify as alleging something new. Well, February 15, 2002 to March 1, 2002, including discussions with counsel for TMSL, that would be me, I assume. Frankly, I have no recollection of speaking with Mr. Powell except perhaps maybe saying hello at one of the numerous court hearings we've had over the years. And I don't... The fact that they may have learned of something to... I don't understand it. We're here at a very preliminary stage in this, and so he would have an opportunity to prove all of this if we were to get to trial. So he doesn't have to prove all of this at this point. The fact that you don't have a recollection makes this a disputed issue of fact, which makes it inappropriate for a decision on, for example, summary judgment. Well, it may be disputed, but I think the question is whether or not it's material. In looking at that sentence that talks about those dates, it says, Plaintiffs learned facts sufficient to enable them to suspect and to allege that the Elwell Declaration was a complete fabrication. To suggest, and I know the Court isn't suggesting this, but to somehow infer from that what I just read, that that was not alleged in Cougasian 2, how was that not... They specifically contended in Cougasian 2 that we made up that guy, Elwell. Okay. Can you show us where that is in the record? All right. I'm looking... You're saying that in Cougasian 2 that they allege that Elwell was made up, and now they're alleging that they've learned that he actually existed and that you withheld his name and address from them. Right, but they also alleged in Cougasian 2 alternative theories. One, that we made him up, and number two, if he did exist, then we didn't give them the information on how to reach him. Okay. Can you show us where that is in Cougasian 2? All right. Well, I'm looking at Judge Cooper's order that we're here about today, and I'm looking at page 4 of her order where she quoted passages from Cougasian 2, beginning on page 3 of that order, but on page 4 it looks to me as if it would be in the first... Well, it's only one... We've got line 5. Yes. It discusses witness tampering. Witness tampering. The refusal to provide addresses of known witnesses, including one whose false declaration they submitted in support of a motion for summary judgment. Well, we only submitted one declaration other than mine. That was Mr. Elwell. That was Elwell. Okay. For subordination of perjury, I mean, I assume that means Elwell also, because there was no other declaration in support of our motion. Open paren 3, after the comma, such as the false declaration upon which the summary judgment motion was based, which plaintiff was prevented from challenging because of the refusal of TMSL and the attorneys provided by K&K Insurance, namely me, in discovery responses, or provide the witness's telephone number or address in response to valid discovery responses, therefore. I don't think that there's any other way to interpret these allegations as being virtually identical, if not identical. And so that gets back to my point about why I think that Judge Cooper's order is so on point on this, that the court, in my view, need look no further than Judge Cooper's order to see the comparison she made and to see that there's really no room for interpretation. Now, I will say this. I know that this is a different group of justices that we had when we were up here three years ago, and at that point in time we were dealing with the Rooker-Feldman Doctrine. And just to touch briefly on this, and this is, I guess, a summation by me, which is that in light of Judge Cooper's order here, there's no doubt in my mind, and I don't think there should be any doubt in anybody's mind, that this is just a total rehash. It was litigated in Cougasian II, and it's barred by race judicata, claim preclusion, everything else in that area of the law. But to the extent that Mr. Powell fielded a question by Justice Duffy on the question of whether there was an error by the court in Cougasian II in sustaining that demur in the first place, and for that matter by the Court of Appeal in California for upholding that, then we get right back to the Rooker-Feldman Doctrine, which is that you can't have a federal court in this instance layer up from a state court in deciding whether or not that lower court made a wrong decision. So in my mind, it really comes down to this, it boils down to this. Either these allegations are barred by claim preclusion, as Judge Cooper indicated, or they're an attack on the state courts in Cougasian II for sustaining the demur and upholding it in the first place, in which case it's barred by Rooker-Feldman. Thank you. Mr. Powell? Oh, I'm sorry. Please record I'm James Bodecker, representing K&K Insurance, and I'll just confine myself to a few remarks. I know the court's concerned with some technical issues. Mr. Powell indicated that no one can be in doubt that he's properly pled fraud in this case, in terms, as Judge Cooper noted, he's essentially pled before numerous times in the state court. But as I think Judge Cooper pointed out, I think the allegations in this case have digressed from where they were in the state courts some years back. The crunch point in this litigation occurred before I arrived. The case itself is a pretty straightforward case of an accident on a ski run. A plaintiff faced with a case like that had better be able to prove that the plaintiff can avoid the doctrine of assumption of risk by proving that there's something that the plaintiff did, apart from just maintaining a ski run, which caused the defendant's death. There was some direct action by a defendant employee, something like that, caused the death. Mr. Powell must have been aware of that fact when he filed this case in 98. With 99, a summary judgment motion is just like a trial. The facts were before the court. The Elwell Declaration was before the court. The time to defend the case is then, if there's a declaration against you that says this accident occurred in a particular fashion, it was counsel's job, as he acknowledged, to go out and find Elwell. And if he could refute his declaration and prove that there was a direct action by a TMSO employee that caused this man's death, that was the time to do it. Instead, the summary judgment went through. There was a continuance. The matter was submitted. The case was decided back in 1999. Now we've digressed. At the time of the Cougasian II pleading, there were some pretty horrible allegations in this complaint about acts of fraud, that Mr. Elwell wasn't a real person, that the declaration was false, phony, and that some other state of facts must have applied, although we never find out what they are, which caused this man's death and created liability in TMSL. Now we have backpedaled the motion to dismiss. We have not only the pleadings, we have an extensive declaration for Mr. Powell. And in his own brief, I think it's rather shocking that he's saying that all the allegations in this complaint about moving bodies, false declarations by counsel, terrible fraud, things that, as he pointed out in his brief, would constitute felonies, such as the concealment of a body, the moving of a body, are based on nothing. His own brief says there are no eyewitnesses that he knows of to any of these allegations. And now having previously alleged in the state court that the Elwell declaration was false, either because it contains false information on which the court relied, or because Elwell didn't exist in the first place, paragraph 18 has now backpedaled. Now, Mr. Elwell does exist. And I was taught that when crunch time occurs in litigation, a summary judgment motion, a trial, much later, eight years later in the appellate level, it's time for the other side to lay their fraud on the table. Instead, Mr. Powell this morning says, in response to a question by the court, where is the beef on these fraud, these terrible allegations? What does Elwell have to say that would have changed the result in the underlying case and that compels this court to take action and overrule two prior cases from the Court of Appeal? And his answer, I don't know. I haven't deposed Mr. Elwell. I think that pretty much sums up the theoretical nature of this appeal. And I think this case has been fully decided in the state courts. My only disagreement with Judge Cooper's ruling is she said, there was nothing here that was not present in Cougasian 2. There was nothing here, gentlemen, that wasn't present in Cougasian 1. Submitted. Mr. Powell, I'd like you to address paragraph 10 in Cougasian 2, if you would. Tell me why paragraph 18 in your second amended complaint, or your first amended complaint in this case, has not been fully covered by paragraph 10 in Cougasian 2. You alleged obstruction of justice. You objected to systematic corruption, abuse of the process, witness tampering, false declarations, subordination of perjury. Why doesn't that cover your complaint? None of them had anything to do with Mr. Elwell's declaration. They had to do with the efforts of the, for example, this isn't in the record, so it's a little difficult to respond, but the witness, Larry Cooper, hiding his brother, who had claimed to be an acquaintance of Cougasian's friends who went out to the ski slope two days later, or a few days later, that he wasn't there, and then later finding out from another witness that he was, in fact, staying with them. So who does the reference to the false declaration refer to? The false declaration refers to Mr. Elwell. Okay. But you alleged in Cougasian 2, then, that it was a false declaration. Right. So what's new in this suit? Well, false means, false declaration by Mr. Elwell means that he's not testifying truthfully. A witness not testifying truthfully does not give rise to a cause of action for extrinsic fraud. But you knew enough then to say that Elwell was lying. So apparently you had found Elwell, knew what the truth was, knew what he said, and knew he was lying? We knew what he said because his declaration had been submitted. Right. We disagreed with the facts set forth in that declaration. Our allegation, then, is that that's false. You knew he was lying. We contended he was lying. Well, these are pretty serious allegations, counsel. You have a Rule 11 responsibility as you plead these kinds of things. No, this is plain in California. You don't have a Rule 11 but I did not represent to the district court anything about the truth of these allegations. We have probable cause to believe in the truth of all of the allegations in the California complaint, including the fact that the Elwell declaration was false. We base that upon the evidence that we have accumulated as to how the incident occurred. The allegation that it's false is nothing more than, in effect, a denial of an allegation in a complaint. If it were not false, if we did not contend that we disagreed with the facts set forth in the Elwell declaration, we wouldn't have been harmed. Obviously, that was an essential element of even objecting to it. In other words, if Elwell was putting forth facts that we agreed with, we wouldn't have even objected to the declaration. Obviously, we disagreed with the facts. That's what false means. It doesn't mean it's fraudulent. It doesn't mean that... That refers to events that occurred during depositions in my office, in the course of the lawsuit. The only thing that refers to Mr. Elwell is that they refused to give us his address, which they claimed they had reason to refuse to do it because they didn't know it. And we knew nothing else other than that they hadn't given it to us. That's what that allegation refers to. As far as the declaration being false, we disagreed with the facts that were set forth in that declaration. I'm a little puzzled as to how you can allege in paragraph 18 in your latest complaint that you've now learned that Elwell was an actual person. Does that mean that you didn't think that Mr. Elwell existed previously? We didn't know. We didn't know if he was a name that had been made up because he hadn't been disclosed to us or whether he was, in fact, a person who had been kept from us. We knew at the time we filed this case, or we had evidence to support a claim. I won't say we knew, that one of those two had occurred. Contrary to what Mr. Weiss said, we didn't make up the guy Elwell in Cagazian 2. In Cagazian 2, we accepted that he was a witness and that his declaration was, in fact, the declaration of that witness, but that it was false in the sense that the story being told was not a true story. But that's the witness's false testimony. That's not the defense submitting a declaration they know to be false. That is not the defense submitting a declaration and intentionally preventing us from having access to the witness. Those facts weren't alleged in Cagazian 2. No fraud against the defendants or their attorneys was alleged in Cagazian 2. Thank you, counsel. You're over your time. Thank you very much. Thank you both.
judges: T.G. Nelson, Bybee, Duffy